UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>　　Plaintiff and Counter-<br>　　Defendant,<br><br>　　v.<br><br>CLAUDEMIR DEARAUJO, ANDERSON G. TEIXEIRA, and S&J TREE SERVICE & LANDSCAPE, INC.,<br><br>　　Defendants and Counter-<br>　　Claimants. | Civil Action No. 20-cv-11508-ADB |

**MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

In this case, the parties dispute whether the insurance policy (the "Policy") that Nautilus Insurance Company ("Nautilus") sold to Anderson G. Teixeira and S&J Tree Service & Landscape, Inc. ("S&J," and, together with Mr. Teixeira, the "Insured") requires Nautilus to defend and indemnify the Insured in a pending state court negligence action filed against them by Claudemir DeAraujo. See [ECF No. 1 ("Compl.")]. Currently before the Court are Nautilus's and Mr. DeAraujo's cross-motions for summary judgment. [ECF Nos. 18 (Nautilus), 29 (DeAraujo)]. For the reasons set forth below, Nautilus's motion is DENIED, and Mr. DeAraujo's motion is GRANTED in part and DENIED in part.

I.  BACKGROUND

    A.  Factual Background

Except as otherwise noted, the following facts are undisputed.[1]

S&J is a landscaping company owned by Mr. Teixeira.  [ECF No. 35-1 ¶ 2].  On or about December 30, 2015, non-party Edward G. Daly hired S&J to remove trees from his property in Randolph, Massachusetts.  [Id. ¶ 1].  S&J subcontracted the job to a company called Tree Brothers.  [Id. ¶ 3].  Mr. DeAraujo, a Tree Brothers employee, went to Mr. Daly's property on December 30, 2015 to work on the tree removal job.  [Id. ¶ 4].  While working, Mr. DeAraujo broke his leg.  [Id. ¶ 6].  According to Mr. DeAraujo, he got hurt when Mr. Teixeira, who was also on-site,[2] negligently activated a winch, which pulled a log into Mr. DeAraujo's leg.[3]  [Id.].

In October 2017, Mr. DeAraujo sued Mr. Daly, Mr. Teixeira, and S&J in Massachusetts state court, alleging that all three were negligent.  [ECF No. 35-1 ¶ 7; ECF No. 1-1 (Mr. DeAraujo's state court complaint)].  At the time of Mr. DeAraujo's injury, both S&J and Mr. Teixeira were named insureds under the Policy.  [ECF No. 35-1 ¶ 9].  When it learned of Mr. DeAraujo's suit, Nautilus agreed to defend the Insured, subject to a reservation of rights.

---

[1] The Court draws the facts primarily from the parties' Final Statement of Undisputed Material Facts and Responses Concerning Plaintiff's Motion for Summary Judgment, [ECF No. 35-1], and the documents referenced therein.

[2] The record is unclear regarding why Mr. Teixeira was at the job site and in what capacity. Although he testified at his deposition in the underlying litigation that he was a Tree Brothers' employee, [ECF No. 30-2 at 4], he submitted an affidavit in this case that says that he was never a Tree Brothers' employee and was acting on behalf of S&J at the job site, [ECF No. 28 ¶¶ 10–11].

[3] Nautilus takes no position on Mr. DeAraujo's account of the cause of his injury, and the Insured admit that Mr. Teixeira was operating the winch but deny that he was negligent.  [ECF No. 35-1 ¶ 14].

[Id. ¶ 12; ECF No. 28-1]. Trial in that case is currently scheduled for September 2021. [ECF No. 35-1 ¶ 6].

### B. Relevant Policy Language

The Policy provides that

> [Nautilus] will pay those sums that the [I]nsured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Nautilus] will have the right and duty to defend the [I]nsured against any "suit" seeking those damages. However, [Nautilus] will have no duty to defend the [I]nsured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

[ECF No. 1-2 at 14]. The Policy contains a "Contractors and Subcontractors" Exclusion (the "Exclusion"), which states that: "[t]his insurance does not apply to 'bodily injury' . . . arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work." [Id. at 50].

### C. Procedural Background

On August 12, 2020, Nautilus filed its complaint against Mr. DeAraujo and the Insured, seeking a declaratory judgment that it has no duty to defend or indemnify the Insured in Mr. DeAraujo's suit against them. [Compl.]. Mr. DeAraujo answered, [ECF No. 6], and the Insured answered and brought a counterclaim, seeking a declaratory judgment that, under the Policy, Nautilus does, in fact, have a duty to defend and indemnify, [ECF Nos. 16, 17]. Nautilus moved for summary judgment on March 15, 2021, arguing that it does not have a duty to defend or indemnify as a matter of law. [ECF No. 18]. Mr. DeAraujo and the Insured opposed on April 13, 2021, [ECF Nos. 23 (Mr. DeAraujo), 26 (the Insured)], and Nautilus replied on April 27, 2021, [ECF No. 32]. Additionally, Mr. DeAraujo filed a cross-motion for summary judgment on

April 15, 2021, relying exclusively on the materials already submitted in connection with Nautilus's motion and arguing that Nautilus has a duty to defend and indemnify. [ECF No. 29].

## II.      DISCUSSION

None of the parties has specifically addressed which state's law governs the interpretation of the Policy. See [ECF Nos. 19, 23, 26, 30]. Because the parties cite exclusively to Massachusetts law, the Court presumes that they agree that Massachusetts law governs, and will therefore apply it. See Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) ("Where, however, the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement."). Under Massachusetts law, "the interpretation of an insurance policy typically embodies a question of law for the court." Vt. Mut. Ins. Co. v. Zamsky, 732 F.3d 37, 42 (1st Cir. 2013).

Nautilus's motion implicates both its duty to defend and its duty to indemnify, and the Court addresses each in turn.

### A.      Duty to Defend

> The law regarding an insurer's duty to defend is well-settled in Massachusetts. The duty to defend is broader than the duty to indemnify. In order to determine whether an insurer has a duty to defend, a comparison must be made of the facts alleged in the underlying complaint with the insurance policy provisions. If the allegations of the complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer has a duty to defend. In sum, [t]he obligation of an insurer to defend is not, and cannot be, determined by reference to the facts proven at trial. Rather, the duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer. [I]nformation derived from outside the complaint may not serve to negate the duty to defend.
>
> Determining the existence *vel non* of the duty to defend requires a court to consider what kind of losses may be proved as lying within the range of the allegations of the complaint, and then see whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy. Put differently, we ask what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.

> The insured initially bears the burden of showing that the allegations in the underlying complaint fit within the covered risks in the policy. Once the insured has satisfied this burden, it falls to the insurer to prove the applicability of one or more separate and distinct exclusionary provisions. Both determinations—whether an allegation creates the possibility of a covered claim, and whether an exclusion applies to relieve an insurer of its duty to defend—depend on whether the insured would have reasonably understood the exclusion to bar coverage.

Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 403–04 (1st Cir. 2009) (second alteration in original) (internal citations and quotation marks omitted).

Because the parties seem to agree that Mr. DeAraujo's negligence suit against the Insured is a "suit" seeking damages because of "bodily injury," the key issue is whether the Exclusion—which excludes suits seeking damages because of bodily injury "arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured"—releases Nautilus from its duty to defend. See [ECF No. 1-2 at 50]. It is Nautilus's burden to demonstrate that the Exclusion applies and, "to the extent (if at all) that any ambiguity permeates a policy exclusion, it must be construed strictly against the insurer." B&T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004). For the reasons stated below, the Court finds that Nautilus has failed to meet its burden.

As discussed above, (1) Mr. Daly hired S&J to clear trees from his property, (2) S&J subcontracted the job to Tree Brothers, (3) Mr. Teixeira still went to the job site and worked on the project notwithstanding the subcontract, (4) Mr. DeAraujo injured his leg, allegedly because of Mr. Teixeira's negligent operation of a winch,[4] and (5) Mr. DeAraujo sued the Insured (and Mr. Daly) for negligence. Nautilus argues that the Exclusion applies because Mr. DeAraujo's injury arose out of work (i.e., tree removal) performed by a subcontractor (i.e., Tree Brothers).

---

[4] As noted earlier, it is disputed whether Mr. Teixeira was working on behalf of S&J or Tree Brothers at the time of Mr. DeAraujo's injury.

[ECF No. 19 at 5]. Ordinarily, the Court would look to how other courts (preferably those interpreting Massachusetts law) have interpreted the relevant policy language. Here, the only case identified by either party involving the interpretation of the same policy language is Nautilus Insurance Co. v. Barfield Realty Corp., a 2012 case from the Southern District of New York. No. 11-cv-07425, 2012 WL 4889280 (S.D.N.Y. Oct. 16, 2012). Barfield is not particularly instructive, however, because, unlike in this case, an insured did not cause the injury leading to the claim. Rather, that case involved a comparatively straightforward application of the policy language.

In the face of no on-point case law, Nautilus notes that Massachusetts courts interpret "arising out of" broadly, and that even if Mr. Teixeira caused Mr. DeAraujo's broken leg, the injury still arose out of (i.e., was connected to) work performed by Tree Brothers, a subcontractor, at Mr. Daly's property. [ECF No. 19 at 5]. Nautilus is correct that "arising out of" is generally construed broadly. See Sterngold Dental, LLC v. HDI Glob. Ins. Co., 929 F.3d 1, 8 (1st Cir. 2019) (quoting Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 7 (1st Cir. 2000)) ("Under Massachusetts law, 'arising out of' indicates a wide range of causation . . . [and] 'is generally understood to mean "originating from," "growing out of," "flowing from," "incident to," or "having connection with."'"). Nevertheless, because Mr. DeAraujo alleges that Mr. Teixeira, an insured under the Policy, negligently injured him while performing work on the tree removal project, see [ECF No. 1-1 at 7], the allegations in Mr. DeAraujo's state court suit can reasonably be interpreted to state a claim covered by the Policy, see Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 18–19 (1st Cir. 1997).[5] Further, an

---

[5] Because Mr. DeAraujo alleges that Mr. Teixeira, himself, caused the bodily injury—and not that Mr. Teixeira failed to adequately supervise his subcontractors—the second clause of the

objectively reasonable insured reading the Policy would expect that if he were accused of negligently injuring someone—even if he did so while working on a project that had been subcontracted to a different company—his claim would be covered. See Essex Ins., 562 F.3d at 404 (noting that reasonable expectation of insured is relevant to duty to defend analysis); Hazen Paper Co. v. U.S. Fid. & Guar. Co., 555 N.E.2d 576, 583 (Mass. 1990) (same). At bottom, this case presents an idiosyncratic fact pattern and an ambiguous exclusion.[6] Against this backdrop, the Court concludes that the Policy could reasonably be read to cover Mr. DeAraujo's claims against the Insured, and that Nautilus therefore has a duty to defend.[7]

---

Exclusion, which excludes coverage for claims for bodily injury arising out of "any acts or omissions in connection with the general supervision of such [contracted or subcontracted] work," [ECF No. 1-2 at 50], is inapplicable.

[6] Nautilus seems to take the position that because S&J subcontracted the tree removal project at Mr. Daly's property to Trees Brothers, any injury occurring at that work site would be covered by the Exclusion. [ECF No. 30 at 2–5]. The language of the Exclusion, however, is not as sweeping as Nautilus contends. The Exclusion does not refer to "work that has been contracted or subcontracted" but rather refers to "work *performed* by any contractor or subcontractor," [ECF No. 1-2 at 50 (emphasis added)], which indicates that the exclusion turns on who actually *did* the work that gave rise to the injury (as opposed to who was contracted or subcontracted to do it). Here, regardless of S&J's contractual arrangement with Tree Brothers, Mr. Teixeira seems to have performed the actual "work" that gave rise to Mr. DeAraujo's bodily injury, and he may have been working on behalf of S&J when he did it.

[7] The cases that Nautilus cites in its reply brief—Merchants Insurance Company v. U.S. Fidelity & Guaranty Co., 143 F.3d 5 (1st Cir. 1998) and National Union Fire Insurance Co. of Pittsburgh, Pa. v. Lumbermens Mutual Casualty Co., 385 F.3d 47 (1st Cir. 2004)—do not compel a different conclusion. In both cases, the First Circuit considered policy provisions in subcontractors' insurance policies that potentially extended coverage to prime contractors. See Merchs., 143 F.3d at 7 (noting that the provision at issue was an "additional insured endorsement" in subcontractor's policy); Lumbermens, 385 F.3d at 48 ("As to the first policy, the question is whether the Lumbermens policy, though issued to the subcontractor, also provided coverage to the prime contractor in the circumstances of this case . . . ."). Here, on the other hand, the issue is whether a prime contractor's policy excludes coverage because a subcontractor was involved in the accident. Further, in both cases, the First Circuit found that there was coverage. Merchs., 143 F.3d at 10; Lumbermens, 385 F.3d at 55. Nautilus has pointed to no case, with facts and policy language similar to those in this case, where a court deemed a contractor and subcontractor exclusion applicable.

Because Nautilus has a duty to defend the Insured in Mr. DeAraujo's state court suit, Nautilus's motion for summary judgment as to its duty to defend, [ECF No. 18], is DENIED, and Mr. DeAraujo's motion for summary judgment as to Nautilus's duty to defend, [ECF No. 29], is GRANTED.

### B. Duty to Indemnify

"The duty to defend is broader than the duty to indemnify." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003). For that reason, the Court's finding regarding the former is not dispositive as to the latter. See AIG Prop. Cas. Co. v. Green, 217 F. Supp. 3d 415, 429 (D. Mass. 2016) ("And although an insurer necessarily owes no duty to indemnify if it has no duty to defend (since the duty to defend is broader than the duty to indemnify), the inverse is not necessarily true.").

At this juncture, the Court cannot determine whether Nautilus has a duty to indemnify. See Newell-Blais Post No. 443, Veterans of Foreign Wars Inc. v. Shelby Mut. Ins. Co., 487 N.E.2d 1371, 1374 (Mass. 1986) ("While an insurer's obligation to defend its insured is measured by the allegations of the underlying complaint, the obligation to indemnify does not ineluctably follow from the duty to defend. . . . The issue of indemnification must await the completion of trial." (citations omitted)); Nat'l Union Fire Ins. Co. v. Mar. Terminal, Inc., No. 14-cv-14541, 2018 WL 813367, at *4 (D. Mass. Feb. 9, 2018) ("Accordingly, a declaratory judgment as to an insurer's duty to indemnify is not ripe until the underlying action has determined liability or adjudicated factual disputes."); AIG Prop. Cas., 217 F. Supp. 3d at 429 ("Accordingly, since the underlying defamation cases have not yet been resolved . . . '[t]he issue of indemnification must await the completion of trial' or settlement." (alteration in original) (quoting Newell-Blais, 487 N.E.2d at 1374)); Metro. Prop. & Cas. Ins. Co. v. Devlin, 95 F. Supp.

8

3d 278, 284 (D. Mass. 2015) ("Given the wide-ranging and disputed versions of the facts that may be established at trial, the [c]ourt also denies the motion for summary judgment on [the insurer's] duty to indemnify [the insured]."); House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., 775 F. Supp. 2d 302, 310 (D. Mass. 2011) ("The duty to indemnify, unlike the duty to defend, is determined by the facts as they unfold at trial or in a settlement agreement, rather than simply the pleadings."). Both summary judgment motions, insofar as they relate to Nautilus's duty to indemnify, [ECF Nos. 18, 29], are therefore DENIED.

### III.   CONCLUSION

For the reasons stated above, Nautilus's motion for summary judgment, [ECF No. 18], is DENIED, and Mr. DeAraujo's motion for summary judgment, [ECF No. 29], is GRANTED in part and DENIED in part. Nautilus has a contractual obligation to defend the Insured in their suit against Mr. DeAraujo. Whether Nautilus also has a duty to indemnify cannot be ascertained until the underlying litigation is resolved.

**SO ORDERED.**

August 3, 2021

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE